IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
JUL 27 2009
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN RE FEDERAL HOME LOAN MORTGAGE )
CORPORATION DERIVATIVE LITIGATION ) 1:08cv773 (LMB/TCB)
)
This document relates to: )
All Actions )
)

MEMORANDUM OPINION

Three groups of shareholders have filed derivative actions on behalf of the Federal Home Loan Mortgage Corporation ("Freddie Mac"). The Federal Housing Finance Agency ("FHFA"), the federal agency acting as conservator of Freddie Mac pursuant to the Housing and Economic Recovery Act of 2008, has intervened and moved to substitute itself in place of the plaintiffs in all of the actions. For the reasons discussed below, the FHFA's motions will be granted.

I. Background

A. Freddie Mac, HERA, and the FHFA.

Freddie Mac was established in 1970 to compete with the Federal National Mortgage Association ("Fannie Mae") in the secondary mortgage market. Although technically private corporations, both Fannie Mae and Freddie Mac are government sponsored enterprises established to facilitate liquidity in the home mortgage market and to promote homeownership. See Federal National Mortgage Association Charter Act, ch. 847, § 301, 48 Stat. 1246, 1252 (1934) (codified as amended at 12 U.S.C. §§ 1716

et seq.); Federal Home Loan Mortgage Corporation Act, Pub. L. No. 91-351, § 301, 84 Stat. 450, 451 (1970) (codified as amended at 12 U.S.C. §§ 1451 et seq.).[1]

The Office of Federal Housing Enterprise Oversight ("OFHEO") was a federal agency established in 1992 to oversee and ensure the financial soundness of Fannie Mae and Freddie Mac. In general, OFHEO's reports about Freddie Mac were positive; as recently as July 2008, OFHEO's director described Freddie Mac and Fannie Mae as "adequately capitalized."[2] However, OFHEO's forecasts and analyses proved incorrect. Freddie Mac reported total losses of $3.1 billion in 2007,[3] and $50.1 billion in 2008.[4]

On July 30, 2008, Congress passed the Housing and Economic

---

[1] Fannie Mae was established in 1938 as a federal agency and was converted into a private corporation in 1968. See About Fannie Mae, http://www.fanniemae.com/aboutfm/charter.jhtml?p=About+Fannie+Mae (Oct. 29, 2008). Freddie Mac was created as an alternative to Fannie Mae to make the secondary mortgage market more competitive and efficient. See Federal Home Loan Mortgage Corporation Act, § 301.

[2] See CNBC.com, Fannie, Freddie Adequately Capitalized: Lockhart, July 8, 2008, http://www.cnbc.com/id/25584136.

[3] See Press Release, Freddie Mac, Freddie Mac Releases Fourth Quarter 2007 Financial Results (Feb. 28, 2008), available at http://www.freddiemac.com/news/archives/investors/2008/2007er-4q07.html.

[4] See Press Release, Freddie Mac, Freddie Mac Reports Fourth Quarter and Full-Year 2008 Financial Results (Mar. 11, 2009), available at http://www.freddiemac.com/news/archives/investors/2008/3q08er.html.

Recovery Act of 2008, Pub. L. No. 110-289, 122 Stat. 2654 (2008) ("HERA"), which merged OFHEO and another agency, the Federal Housing Finance Board, to form the new Federal Housing Finance Agency ("FHFA"). See HERA, §§ 1301-1314, 122 Stat. at 2794-2799. HERA further provided that until appointment and confirmation of an FHFA director, OFHEO's former director would act as director of the FHFA. Id. § 1101, 122 Stat. at 2662. The plaintiffs have alleged, and the FHFA has not disputed, that there is significant overlap between OFHEO's staff and that of the FHFA.[5]

HERA granted the FHFA's director the authority to appoint the FHFA as conservator or receiver of Freddie Mac, Fannie Mae, and any Federal Home Loan Bank. Pursuant to this authority, on September 6, 2008, FHFA Director James Lockhart appointed the FHFA as Freddie Mac's conservator.[6] Under the broad powers established by HERA for conservators, the FHFA has "succeed[ed] to all rights, titles, powers, and privileges of [Freddie Mac], and of any stockholder, officer, or director of [Freddie Mac] with respect to [Freddie Mac] and the assets of [Freddie Mac]," and is empowered to "take over the assets of and operate [Freddie

---

[5] The director of the FHFA is James Lockhart, the former director of OFHEO. In addition, the plaintiffs allege that much of OFHEO's staff and legal team was transferred to the FHFA, and that the FHFA's legal department is directed by OFHEO's former general counsel.

[6] See Statement of FHFA Director James B. Lockhart (Sept. 7, 2008), available at http://www.fhfa.gov/webfiles/23/FHFAStatement9708final.pdf.

Mac] with all the powers of the shareholders, the directors, and the officers of [Freddie Mac] and conduct all business of [Freddie Mac]." 12 U.S.C. §§ 4617(b)(2)(A)(i), (B)(i). The statute also provides that, except under limited circumstances not at issue here, "no court may take any action to restrain or affect the exercise of powers or functions of the [FHFA] as a conservator or a receiver." 12 U.S.C § 4617(f).

**B. These Civil Actions.**

These three consolidated cases - Bassman, Adams Family Trust, and Louisiana Municipal[7] - are derivative actions filed by shareholders on Freddie Mac's behalf. All of the plaintiffs assert claims against Freddie Mac's former board members. Plaintiff Bassman has also sued other corporations, including PricewaterhouseCoopers LLP, First American Corporation, First American Eapppraiseit, Washington Mutual, Inc., and several entities of Countrywide Financial Corporation,[8] as well as

---

[7]Civil Action Nos. 1:08cv773, Adams Family Trust v. Syron ("Adams Family"), and 1:08cv849, Louisiana Municipal Police Employees Retirement System v. Syron ("Louisiana Municipal"), were filed in this court in July and August 2008, respectively, and consolidated on October 15, 2008. Civil Action No. 1:08cv1247, Bassman v. Syron ("Bassman"), was originally filed in the Southern District of New York in March 2008, ordered transferred to this court on November 20, 2008, and consolidated together with the above actions on December 12, 2008. All three actions are consolidated under Civil Action No. 1:08cv773 and have the consolidated caption In re Federal Home Loan Mortgage Corporation Derivative Litigation.

[8]These include Countrywide Financial Corporation, Countrywide Home Equity Loan Trust, Country-Wide Bank, FSB,

officers of those corporations, for allegedly contributing to Freddie Mac's demise.

After the plaintiffs made demands on Freddie Mac to pursue the claims, Freddie Mac appointed a special litigation committee ("SLC") of three purportedly independent board members to investigate the claims, and retained counsel to assist in the investigation. On September 4, 2008, the SLC met with the Adams Family and Louisiana Municipal plaintiffs to discuss possible resolution of the litigation, invited the plaintiffs to submit a list of suggested corporate reforms, and conveyed its willingness to continue discussing the issues raised by the plaintiffs. When the FHFA became Freddie Mac's conservator, the board members, including the members of the SLC, were dismissed.[9]

After being granted permission by the Court to intervene, the FHFA moved to substitute itself for the plaintiffs in all of the consolidated actions, asserting that under the above-quoted provisions of HERA, it is the only party with standing to sue on behalf of Freddie Mac, and that allowing the plaintiffs to continue pursuing this litigation would interfere with its powers

---

Countrywide Home Loans, Inc., and Landsafe, Inc.

[9]Following the establishment of the conservatorship, the plaintiffs advised the FHFA of this litigation and inquired as to how the FHFA would be handling it. The Adams Family and Louisiana Municipal plaintiffs never received a response; counsel for the Bassman plaintiffs met with an FHFA attorney on October 15, 2008. The FHFA has indicated to the Court that it is continuing to evaluate the claims.

in contravention of HERA's mandate. After hearing argument on FHFA's motions, the Court held the motions in abeyance, stayed the matter, and ordered the parties to appear on May 1, 2009 for a status hearing.

At the status hearing, the plaintiffs contended that their opposition to the FHFA's substitution as plaintiff was buttressed by the FHFA's alleged failure to file a claim on Freddie Mac's behalf in a recent bankruptcy of Washington Mutual Bank. The Court ordered the FHFA to file a response. The FHFA's response provided evidence that Freddie Mac, acting under the FHFA's authority, had, in fact, filed proofs of claims related to two separate Washington Mutual entities - one regarding Washington Mutual, Inc. in bankruptcy, and one regarding Washington Mutual Bank in FDIC receivership - and had also recently entered into a confidential settlement with JP Morgan Chase, the purchaser of the assets of Washington Mutual Bank.[10] Given the FHFA's timely response to the Court's order concerning the Washington Mutual proceedings, and in light of two recent decisions in similar cases, the Court finds that the motions to substitute are ripe for adjudication.

## II. Discussion

At issue in the FHFA's Motion to Substitute is whether HERA

---

[10] Under the settlement, Freddie Mac received a one-time payment related to Chase's obligations to repurchase mortgages that Washington Mutual Bank had sold to Freddie Mac.

bars the plaintiffs from maintaining their derivative actions. The FHFA, relying on the plain language of HERA as well as case law, argues that it alone has standing to sue on behalf of Freddie Mac, and that allowing plaintiffs to sue would affect FHFA's ability to fulfill its mandate as conservator. The plaintiffs argue that HERA does not bar them from suing derivatively, at least on these facts. Alternatively, the plaintiffs have proposed that the Court continue the stay of the motions to substitute until the FHFA has indicated whether or not it intends to actually litigate the claims raised in their complaints.

The FHFA's argument has merit. The FHFA's position is consistent with the language of HERA, with the recent decisions reached by two other federal district courts, as well as with the persuasive case law interpreting an analogous statute. Finally, particularly given the FHFA's involvement in the Washington Mutual bankruptcy, the Court does not find that the plaintiffs' concerns of conflicts of interest or bad faith warrant granting them derivative standing.

### A. Shareholder Derivative Suits.

Normally, a corporation's board of directors has complete discretion to prosecute the corporation's causes of action. See United Copper Sec. Co. v. Amalgamated Copper Co., 244 U.S. 261, 263 (1917). Shareholders wishing to initiate an action on a

corporation's behalf must first make a reasonable demand on the board of directors to initiate the action; if the board elects to pursue the claims, it alone has standing to do so. See Meltzer v. Atlantic Research Corp., 330 F.2d 946, 949 (4th Cir. 1964). If the shareholders' demand is refused or ignored, or if they demonstrate that a demand would be futile, they may pursue a derivative action. See id.

A shareholder derivative complaint in federal court must "state with particularity any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). In this case, it is undisputed that the plaintiffs have made proper demands, and that to date, neither Freddie Mac's board nor the FHFA has affirmatively pursued the claims.

**B. HERA's Impact on the Plaintiffs' Standing.**

**1. Plain Language.**

Under HERA, the FHFA, as Freddie Mac's conservator, possesses "all rights, titles, powers, and privileges of . . . any stockholder . . . of [Freddie Mac] with respect to [Freddie Mac] and the assets of [Freddie Mac]," and was granted the power to "take over the assets of and operate [Freddie Mac] with all the powers of the shareholders . . . of [Freddie Mac] and

corporation's behalf must first make a reasonable demand on the board of directors to initiate the action; if the board elects to pursue the claims, it alone has standing to do so. See Meltzer v. Atlantic Research Corp., 330 F.2d 946, 949 (4th Cir. 1964). If the shareholders' demand is refused or ignored, or if they demonstrate that a demand would be futile, they may pursue a derivative action. See id.

A shareholder derivative complaint in federal court must "state with particularity any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). In this case, it is undisputed that the plaintiffs have made proper demands, and that to date, neither Freddie Mac's board nor the FHFA has affirmatively pursued the claims.

**B. HERA's Impact on the Plaintiffs' Standing.**

**1. Plain Language.**

Under HERA, the FHFA, as Freddie Mac's conservator, possesses "all rights, titles, powers, and privileges of . . . any stockholder . . . of [Freddie Mac] with respect to [Freddie Mac] and the assets of [Freddie Mac]," and was granted the power to "take over the assets of and operate [Freddie Mac] with all the powers of the shareholders . . . of [Freddie Mac] and

conduct all business of [Freddie Mac]." 12 U.S.C. §§ 4617(b)(2)(A)(i), (B)(i). As the FHFA argues, the plain meaning of the statute is that <u>all</u> rights previously held by Freddie Mac's stockholders, including the right to sue derivatively, now belong exclusively to the FHFA.[11]

### 2. Case Law.

The plain language reading of HERA is supported by persuasive judicial authority. Two courts have already ruled that HERA bars derivative suits by shareholders of the affected companies. See <u>Esther Sadowsky Testamentary Trust v. Syron</u>, No. 08cv5221, 2009 WL 1309776 (S.D.N.Y. May 6, 2009) ("<u>Sadowsky</u>"); <u>In re Fed. Nat'l Mortgage Ass'n Sec., Derivative, and ERISA Litig.</u>, MDL No. 1668, 2009 WL 1837757 (D.D.C. June 25, 2009) ("<u>In re Fannie Mae</u>"). Additionally, the Court is persuaded by decisions that have reached the same conclusion when interpreting the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA"), whose provisions regarding the powers of federal bank receivers and conservators are substantially identical to those of HERA.[12] See

---

[11] The plaintiffs have asserted that the ability to bring a derivative suit is not a right, but an equitable remedy. The Court does not find this distinction persuasive.

[12] FIRREA mandates, in relevant part, that federal conservators or receivers of banks succeed to "all rights, titles, powers and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect

Pareto v. FDIC, 139 F.3d 696, 700 (9th Cir. 1998) (holding that under FIRREA, "Congress has transferred everything it could to the FDIC, and that includes a stockholder's right, power or privilege to demand corporate action or to sue directors or others when action is not forthcoming"); In re Southeast Banking Corp., 827 F. Supp. 742, 746 (S.D. Fla. 1993) (holding that "such derivative claims belong exclusively to the FDIC"). This conclusion is also consistent with the most recent Fourth Circuit ruling on this issue. See Lafayette Fed. Credit Union v. Nat'l Credit Union Admin., 960 F. Supp. 999, 1005 (E.D. Va. 1997), aff'd, 133 F.3d 915, 1998 WL 2881 (4th Cir. Jan. 7, 1998) (unpublished) (holding that FIRREA bars shareholders of a credit union under a federal conservatorship from suing derivatively).[13]

---

to the institution and the assets of the institution," and may "take over the assets of and operate the insured depository institution with all the powers of the members or shareholders, the directors, and the officers of the institution and conduct all business of the institution." 12 U.S.C. §§ 1821(d)(2)(A)(i), (B)(i).

[13] In light of the Fourth Circuit's affirmance in Lafayette, the authority of Bauer v. Sweeny, 964 F.2d 305 (4th Cir. 1992), which the plaintiffs cite in support of their position, is questionable. In Bauer, a 2-1 panel decision, the Fourth Circuit held that "derivative rights of shareholders [of a corporation in receivership] are lost after claims are sold [by the receiver to another entity]." Bauer, 964 F.2d at 308. It also declined to overrule a previous holding that allowed shareholders to pursue a derivative claim when "the receiver manages the . . . assets [of the entity in receivership]," as is the case here. Id. at 307. As the FHFA notes, however, the latter statement in Bauer was not essential to the court's decision, and given the more recent affirmance in Lafayette, the Court finds Lafayette more persuasive as applied to the case at bar.

The plaintiffs, however, argue for the application of a common-law rule that shareholders of a corporation under federal conservatorship or receivership may still maintain a derivative suit if the conservator or receiver does not pursue such an action.  This was the general rule in this circuit and elsewhere before the enactment of FIRREA.  See Womble v. Dixon, 752 F.2d 80, 82-83 (4th Cir. 1984) (holding that derivative suits can proceed if the receiver is not "justified in declining to press [the shareholder plaintiffs'] claims").[14]  However, FIRREA, passed in the aftermath of the savings and loan crisis of the 1980s, amended the relevant statute to provide federal receivers and conservators with "all rights, titles, powers and privileges of the [institution in receivership or conservatorship], and of any stockholder, member, accountholder, [or] depositor."  12

---

[14] See also Gaubert v. United States, 885 F.2d 1284, 1290 n.6 (5th Cir. 1989) ("A derivative action is not precluded when a bank is placed into receivership; rather, any demand to bring suit must be made upon the receiver or agency possessing the right to assert the corporations' claims."); Landy v. FDIC, 486 F.2d 139, 148 (3d. Cir. 1973) ("A derivative suit by shareholders should not be precluded merely because a bank is in the receivership of the FDIC."); O'Connor v. Rhodes, 79 F.2d 146, 149 (D.C. Cir. 1935) ("[W]hile, as a rule, a stockholder's or creditor's suit cannot be maintained until demand has been made upon the receiver, the Comptroller [of the Currency], or the bank, the rule does not apply where the receiver or Comptroller refuses to bring the suit.").  But see First Sav. & Loan Ass'n v. First Fed. Sav. & Loan Ass'n of Haw., 547 F. Supp. 988, 994 (D. Haw. 1982) (holding that shareholders did not have the right to bring a derivative suit on behalf of a bank in the receivership of the Federal Savings and Loan Insurance Corporation).

U.S.C. § 1821(d)(2)(A)(i) (emphasis added). FIRREA, unlike the previous version of the statute, included "stockholder[s]" in the list of entities whose powers were inherited by conservators. See Suess v. U.S., 33 Fed. Cl. 89, 94 (Fed. Cl. 1995). The plain meaning of this change is that federal receivers and conservators of covered entities - which, pursuant to HERA, now include Freddie Mac - succeed to all rights of stockholders, including the right to bring a derivative suit. As such, the common-law rule cited by the plaintiffs is based on an interpretation of pre-FIRREA statutes and inapplicable to the instant case.

It is true that some courts interpreting FIRREA have reached the opposite conclusion and have applied the common-law rule notwithstanding the statutory language. See Suess, 33 Fed. Cl. at 94 (holding that the addition of "stockholders" to FIRREA was meant to ensure that the statute covered shareholder-owned savings and loans, and not to preclude stockholders from asserting their rights); Branch v. FDIC, 825 F. Supp. 384, 404 (D. Mass. 1993) (holding that because Congress provided that shareholders retain rights to "residual assets of the failed financial institution," they also retain the ability "to protect the failed institution's interests").[15] These cases, however,

---

[15] Other courts have stated in dicta that under FIRREA, shareholders may bring a derivative suit after an unsuccessful demand on a receiver or conservator. See Am. Cas. Co. of Reading, Pa. v. FDIC, 39 F.3d 633, 637 (6th Cir. 1994); In re Sunrise Sec. Litig., 916 F.2d 874, 879 (3d Cir. 1990). These

are unpersuasive in light of the broad, sweeping language of HERA, which not only transfers "all rights, titles, powers, and privileges" of stockholders to the FHFA, 12 U.S.C. § 4617(b)(2)(A)(i), but also bars a court from "restrain[ing] or affect[ing] the exercise of powers or functions of the [FHFA] as a conservator or a receiver," 12 U.S.C. § 4617(f). This language clearly demonstrates Congressional intent to transfer as much control of Freddie Mac as possible to the FHFA, including any right to sue on behalf of the corporation. See Pareto, 139 F.3d at 700. Accordingly, the FHFA is the proper plaintiff.

### 3. Possible Conflicts of Interest.

The plaintiffs also argue that the FHFA's motions to substitute should be denied, or at least held in abeyance, because the instant litigation raises concerns of a conflict of interest and calls into question whether the FHFA will pursue the claims at issue. There is authority for the principle that under FIRREA, if a federal receiver or conservator is subject to a manifest conflict of interest, shareholders can maintain a derivative suit despite otherwise being barred from doing so. The Federal Circuit permitted derivative standing where the plaintiffs' complaint alleged a breach of contract caused by the FDIC, the very federal agency that was the receiver of the

---

holdings are unpersuasive because the issue of whether FIRREA divests shareholders of derivative standing was not squarely presented.

corporation. See First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1295 (Fed. Cir. 1999). Similarly, the Ninth Circuit allowed plaintiffs to sue derivatively where the defendant, the Office of Thrift Supervision ("OTS"), and the receiver, the FDIC, were "closely-related, sister agencies" within the federal government that "jointly publish[ed] regulations, issue[d] reports, and conduct[ed] cooperative investigations." Delta Savings Bank v. United States, 265 F.3d 1017, 1023-24 (9th Cir. 2001). In both cases, the courts concluded that it was unrealistic to expect the FDIC to be able to evaluate the claims impartially under the circumstances.

Most of the alleged conflicts in this case involve FHFA's relationship with its predecessor, OFHEO.[16] According to the plaintiffs, OFHEO's failures in regulating Freddie Mac would likely be illuminated in any litigation; many of the FHFA's current employees, who were previously employees of OFHEO, are potential witnesses; and the history of OFHEO, as well as the circumstances under which the federal government took over Freddie Mac, suggest that the FHFA will not be a scrupulous government watchdog and litigator.[17] The plaintiffs argue that a

---

[16] As noted supra, the FHFA's director was the director of OFHEO, and, according to the plaintiffs, much of OFHEO's former staff now works at the FHFA.

[17] Plaintiffs also note that the FHFA's counsel in this action, Arnold & Porter, has defended claims brought in prior derivative litigation on behalf of Freddie Mac.

-14-

finding of a conflict is supported by the FHFA's failure to indicate whether it intends to pursue the claims in this litigation despite having been aware of them since September 2008.

These circumstances do not raise conflicts of interest similar to those in First Hartford and Delta Savings. See Sadowsky, 2009 WL 1309776, at *2; In re Fannie Mae, 2009 WL 1837757, at *2 n.5. The defendants in the cases at bar are not the FHFA, OFHEO, or any of their directors or employees. Rather, they are individual board members of Freddie Mac, and - in the Bassman action - other corporations and individuals that the plaintiffs claim adversely impacted Freddie Mac. Thus, the relationship between the defendants and the FHFA is one between a regulator and a regulated entity (or the regulated entity's board members). This is not analogous to First Hartford, where the defendant was the federal government and the alleged breach of contract was committed by the federal receiver, or to Delta Savings, where the receiver - the FDIC - and the defendant - OTS - were "sister agencies." Given that a court should presume regularity by government agencies, United States Postal Serv. v. Gregory, 534 U.S. 1, 10 (2001), it would be improper to presume a conflict of interest based on speculation that the FHFA is acting

in bad faith.[18]

Moreover, when the Court gave the plaintiffs an opportunity to provide an example of how the FHFA was allegedly failing to protect Freddie Mac's interests, plaintiffs asserted that the FHFA had failed to file a claim in the Washington Mutual Bankruptcy. The FHFA's response, however, satisfies the Court that the FHFA has adequately represented Freddie Mac's interests in the Washington Mutual bankruptcy proceeding and can be expected to do so in this litigation as well.[19]

Finally, the FHFA's failure to indicate whether it intends to pursue the claims at issue in this litigation is not, in and of itself, sufficient evidence to warrant finding a manifest conflict of interest as in First Hartford and Delta Savings, given the mammoth complexity of Freddie Mac's problems and the

---

[18] In one filing, the plaintiffs also suggest that counsel for the FHFA may have a conflict of interest with regard to Washington Mutual, Inc., which is a defendant in the Bassman action, because it has been representing Washington Mutual, Inc. in other proceedings. That the FHFA's retained counsel may have a conflict does not mean that the FHFA itself does. Of course, the Court fully expects counsel for the FHFA to comply with all relevant rules regarding conflicts of interest and to apprise the Court of any possible conflicts that could impact its ability to represent the FHFA in this litigation.

[19] Plaintiffs point out that the Washington Mutual bankruptcy claims were filed by Freddie Mac's in-house counsel and not by the FHFA itself. This is irrelevant. What is relevant is that under the stewardship of the FHFA, Freddie Mac acted to protect its financial interests (and any residual interests of shareholders), thus undermining plaintiffs' claims that derivative litigation is necessary to protect those interests.

scope of the conservatorship. In granting the conservator broad, sweeping authority over Freddie Mac's assets, Congress made it clear that it left to the FHFA, not to Freddie Mac's shareholders, the discretion to decide how best to manage the assets of Freddie Mac. Choosing whether or not to sue particular entities or persons is certainly within that broad discretion. Absent a showing of a clear conflict of interest similar to the conflicts at issue in First Hartford and Delta Savings, the plaintiffs lack standing to pursue these claims.[20]

**C. The Effect of 12 U.S.C § 4617(f).**

Additionally, given that the plaintiffs lack standing and that the FHFA opposes allowing them to remain in this suit, the FHFA's motions to substitute will be granted because another provision of HERA provides that "no court may take any action to restrain or affect the exercise of powers or functions of the [FHFA] as a conservator or a receiver." 12 U.S.C § 4617(f). A court action can "affect" a conservator even if, as in the cases at bar, the litigation is not directly aimed at the conservator itself. See Hindes v. FDIC, 137 F.3d 148, 159-61 (3d. Cir.

---

[20] Plaintiffs have also argued that they should be granted standing because even if the FHFA litigated the claims, it might be unable to recover damages from Freddie Mac's board members because of certain exclusions commonly present in directors' and officers' liability policies that might apply to a suit by the FHFA. Like the allegations of conflicts of interest, this assertion is highly speculative and cannot overcome HERA's statutory mandate. See Sadowsky, 2009 WL 1309776, at *4.

1998). Here, the FHFA has represented that allowing different groups of shareholder plaintiffs to maintain independent derivative actions would affect its duties as conservator by interfering with its ability to manage Freddie Mac's assets, and pursue any claims on its behalf, in the manner which it deems appropriate or necessary.

The Court agrees with the plaintiffs that, if the FHFA were to act beyond statutory or constitutional bounds in a manner that adversely impacted the rights of others, § 4617(f) would not bar judicial oversight or review of its actions. See Coit Independence Joint Venture v. FSLIC, 489 U.S. 561, 575 (1989) (holding that a similar provision does not divest courts of subject matter jurisdiction); Chemical Futures & Options, Inc. v. RTC, 832 F. Supp. 1188, 1192-93 (N.D. Ill. 1993) (internal citation omitted) (holding that such a provision does not "elevate the [receiver] to the position of a sacred cow which may graze upon the rights of others at will, unchecked by the courts"). However, in this case, the FHFA has properly moved to substitute itself for shareholders who lack standing. It is acting well within its statutory authority under HERA, and the shareholders do not have any "rights" that are implicated. Accordingly, the Court finds that allowing the plaintiffs to remain in this action would violate § 4617(f) as well.

## III. Conclusion.

For the above reasons, FHFA's motions to substitute itself as plaintiff for the shareholders will be granted by an Order to be issued with this Memorandum Opinion, and all of the plaintiffs' pending motions will be denied as moot.

Entered this 27th day of July, 2009.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge